AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lauren Viup, being duly sworn, depose and state as follows:

1. Your Affiant has been employed by the Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) as a Special Agent (SA) since January of 2016. Affiant is currently assigned to the Louisville Field Division (LFD). In connection with my official ATF duties, I investigate criminal violations of state and federal firearms laws including, but not limited to, violations of Title 18, United States Code, Section 111. Affiant has received specialized training in the enforcement of laws concerning firearm related offenses as found in Title 18 of the United States Code. Your affiant has received investigative training in overt and/or covert methods to investigate violent criminal acts by individuals, organizations and/or gangs. These violent acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession, or use of explosives and/or destructive devices. Your Affiant also has been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of firearms and narcotics related offenses. The following information has been obtained through personal observation and knowledge or was told to this Affiant by other law enforcement agents. This affidavit does not contain every fact known to me, but states only those facts necessary to establish probable cause for an arrest warrant for violations of Title 18, United States Code, Section 111(b).

2. On or about January 11, 2022, Louisville Metro Police Department (LMPD) Detective (Det.) Amber Koenig obtained a state arrest warrant for Dajuan SIMONTON, for violations of Kentucky Revised Statutes (KRS) 509.040

Kidnapping-Adult and KRS 507.020 Murder. Det. Koenig also obtained a state search warrant for SIMONTON's parents' house, where he resided, located at 363 N. 41st Street, Louisville, KY. The ATF Special Response Team (SRT) was requested to assist in the execution of the aforementioned warrants.

3. On or about January 12, 2022, at approximately 0515 hours, Law Enforcement Officers (LEOs) staged at a nearby location, prior to executing the above-mentioned warrants. All ATF SRT personnel were wearing issued SRT gear that is green in color. All LEOs were clearly marked with various forms of "POLICE" identifiers and gear, included but not limited to: ballistic vests, tactical helmets, ATF POLICE patches, and LMPD POLICE patches.

4. At approximately 0600 hours, Law Enforcement Officers (LEOs) approached 363 N. 41st Street, to execute the above-mentioned warrants. I was stationed at the corner of 41st and Garfield Avenue, approximately one house away from the target residence. with a marked LMPD vehicle. Garfield Avenue is the cross street just north of the target residence. An additional marked LMPD vehicle was stationed at 41st Street and Jewell Avenue (the cross street just South of the target address). The two marked LMPD vehicles were positioned to be able to intercept any persons and/or vehicles and block entry to the immediate area. ATF SRT personnel made their approach to the residence, along with the Bearcat, which is a ballistic, tactical vehicle. The Bearcat initiated its police lights; simultaneously, the marked LMPD vehicles initiated their police lights. I heard at least one flashbang deployed, which is a very loud distraction device. I also heard ATF SRT members hail multiple times for all occupants inside 363 N. 41st Street to exit the residence.

5. While maintaining my position with the marked LMPD vehicle, a neighbor whose house was located on Garfield Avenue (diagonal to the target address), came out of his house to see what was going on. He told me that he heard a loud bang and could see the "lights" from his bedroom window. An LMPD Officer and I escorted him back to his house safely. I also observed individuals in at least three neighboring houses on N. 41st Street, peer out of their windows and doors following the loud commotion made during the execution of the above-mentioned warrants.

6. ATF SRT members advised that they conducted a knock and announce, while the hailing continued; this consisted of loudly banging on the front door of the residence while yelling something to the effect of "police with a warrant, come to the door," at least three times. ATF SRT members further advised me that the call was made to breech the door, and a ram was used to gain entry. It took approximately four times of hitting the door with the ram to gain entry into the house. After the door opened, it swung back on the ATF SRT members making entry and had to be kicked back open.

7. Two ATF SRT members made entry into the residence. When the third member entered the residence, he was fired upon from the top of the stairwell, on the second story of the house. The ATF SRT member saw a hand and forearm point a firearm in his direction. The ATF SRT member heard at least three rounds fired and saw the recoil of the firearm, while the firearm was pointed in his direction. The ATF SRT member returned fire until the threat was no longer shooting at the agent.

8. Multiple SRT members shouted commands to the individual who had fired to drop the weapon. The suspect appeared to turn away from SRT members, bent over and dropped something, which made a loud clunk. The individual complied with demands

and came down the stairs. The shooter was identified as Donald SIMONTON, father to Dajuan SIMONTON. As he was being detained, he made a spontaneous utterance to an SRT member, identifying himself as the individual who shot at the SRT and said he did so three times.

9. Once detained, Donald SIMONTON was taken to the ATF SRT medic in a safe location, where he made additional spontaneous utterances to the ATF SRT members advising that he had shot. One such spontaneous utterance included something to the effect of "I shot at them, I did, but I didn't know they were police." Donald SIMONTON advised ATF SRT that he suffered from COPD and was having a hard time breathing; the ATF SRT Medic administered oxygen to him until EMS arrived and took over treatment.

10. Three additional persons were taken out of the residence without further incident, including Dajuan SIMONTON.

11. A revolver was located on the second-floor threshold in the approximate location Donald SIMONTON was standing when the exchange of gunfire occurred. The revolver was a Ruger, model SP101, .38 special, bearing serial number 572-95120. In the cylinder of the Ruger revolver, three fired cartridge casings were located, as well as two intact rounds of ammunition.

12. I reviewed documents from LMPD Public Integrity Unit (PIU) Sergeant (Sgt.) William Keeling regarding his interview of Donald SIMONTON after his Miranda Warnings were read. Donald SIMONTON rushed Sgt. Keeling through reading his Miranda Warnings, saying something to the effect that he knew his rights and wanted to tell him what happened. Donald SIMONTON admitted to Sgt. Keeling that he fired

three to four gunshots at a subject standing in the doorway of his front door, after he heard loud knocking and the door swung open. Donald SIMONTON told Sgt. Keeling that he did not know the police were entering his home.

13. Dajuan SIMONTON was also interviewed by LMPD, which I reviewed in real time. LMPD Det. Rusty Holland attempted to interview Dajuan SIMONTON after reading him his Miranda Warnings. Dajuan SIMONTON acknowledged his rights and agreed to talk to Det. Holland, however, he refused to physically sign his consent. Det. Holland interviewed Dajuan SIMONTON regarding his alleged involvement in the kidnapping and homicide case, which he was charged with. Dajuan SIMONTON was only interested in discussing the shooting that occurred earlier that day. The interview was stopped until Sgt. Keeling was available to discuss the situation with Dajuan SIMONTON.

14. Sgt. Keeling read Dajuan SIMONTON his Miranda Warnings again, which he again acknowledged and refused to sign. Dajuan SIMONTON said he knew the police were at the door and stated numerous times that he knew that because his girlfriend and him were watching a movie on his cell phone and he lost cell phone reception. Dajuan SIMONTON also said he knew the police were at the door because they were yelling "LMPD." He also referred to the police at his house as ATF and United States Marshals Service (USMS). Dajuan SIMONTON said something to the effect of, he exited his room and said don't shoot.

15. Dajuan SIMONTON was very agitated claiming the police came into his house and shot at his family. Dajuan SIMONTON was adamant that he did not shoot at the police. Dajuan SIMONTON told Sgt. Keeling that the police have been at his house

before. Dajuan SIMONTON further advised LEOs that his house had also been shot up before. Dajuan SIMONTON knew his father possessed a gun in the house, which he described to LEOs. The firearm he described matched the revolver that was recovered during the search warrant at 363 N. 41st Street, from the approximate area Donald SIMONTON was standing when the exchange of gunfire occurred.

16. Title 18, United States Code, Section 111 (Assaulting, Resisting, or Impeding Certain Officers or Employees) prohibits:

    (a) In general.—Whoever—(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 [as a federal officer] while engaged in or on account of the performance of official duties; or (2) forcibly assaults or intimidates any person who formerly served [as a federal officer] on account of the performance of official duties during such person's term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

    (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon ... or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

17. The evidence outlined above establishes probable cause to believe Donald SIMONTON violated Title 18, United States Code, Section 111 (Assaulting, Resisting, or Impeding Certain Officers or Employees), on or about January 12, 2022, in Jefferson County, Kentucky, located in the Western District of Kentucky.

*Lauren Viup*

Lauren Viup, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me by telephone on January 14, 2022, in accordance with Fed. R. Crim. P. 4.1.

*Colin Lindsay*

Colin H Lindsay, Magistrate Judge
United States District Court