UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Plaintiff, |
| v. | Criminal Action No. 3:22-cr-06-DJH |
| DONALD A. SIMONTON, | Defendant. |

\* \* \* \* \*

## ORDER

The United States has filed a motion for entry of a protective order governing discovery in this matter (Docket No. 14), which Defendant Donald A. Simonton, through counsel, opposes (D.N. 16). For the reasons explained below, the government's motion will be denied without prejudice with leave to file a new motion and proposed protective order.

Simonton was indicted on January 19, 2022, on one count of assaulting, resisting, or impeding federal officers with a deadly weapon and one count of using a firearm in relation to a crime of violence. (D.N. 3) According to the criminal complaint filed in this matter, Louisville Metro Police Department (LMPD) officers obtained an arrest warrant against Simonton's son, Dajuan, who was wanted on state charges of kidnapping and murder. (D.N. 1, PageID # 2–3) Because Dajuan was living with Simonton at the time, LMDP also obtained a search warrant for Simonton's house in Louisville. (*Id.*, PageID # 3) Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agreed to help LMPD execute the state warrants in the early morning of January 12, 2022. (*Id.*) Shortly after ATF agents battered in the front door of Simonton's house to gain entry, Simonton, who claimed that he did not know that the entrants were police, fired at least three gunshots toward the agents from the top of the staircase leading to the second story of his house. (*Id.*, PageID # 4–6) The agents returned fire, and Simonton

eventually complied with their commands to drop his firearm.  (*Id.*, PageID # 4–5)  No one was harmed in the exchange, and Simonton's son was eventually removed from the house and arrested "without further incident."  (*Id.*, PageID # 5)  Yet Simonton was also arrested and later criminally charged for his conduct that morning.  (D.N. 3; *see* D.N. 9)

The United States has now filed a motion for entry of a protective order governing discovery in this matter pursuant to Federal Rule of Criminal Procedure 16(d)(1), arguing that the "need" for such an order "arises from the government's important interest in ensuring the safety of witnesses in this case."  (D.N. 14, PageID # 34)  More specifically, the government contends that Simonton's son's "criminal history and gang affiliation" and the fact that Simonton "is in regular contact" with his son necessitate a protective order "to protect witnesses from fear of retaliation for providing statements" to law enforcement.  (D.N. 17, PageID # 50–51)  Simonton opposes the government's motion.  (D.N. 16)  He contends that he "is not a threat to any of the witnesses" and that the requested protective order would thus "do[] nothing to protect [them]." (*Id.*, PageID # 47)  Simonton also objects to the scope of the United States' proposed order, arguing that the government has, in effect, "preemptively asked for a protective order for all of the discovery" in this case "without demonstrating with specificity that [such an order] is necessary for any part of the discovery."  (*Id.*, PageID # 48)

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery . . . or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  Such relief "includes issuing protective orders" governing discovery.  *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019); *see United States v. Borges*, No. 1:20-cr-77, 2022 WL 219391, at *2 (S.D. Ohio Jan. 25, 2022) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted

disclosure of the materials which they may be entitled to inspect." (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969))). When the government seeks a protective order, "it bears the burden of showing that good cause exists for its issuance," *Dixon*, 355 F. Supp. 3d at 4, which in turn requires "show[ing] that disclosure" of certain discovery materials "will result in a clearly defined specific and serious injury." *Borges*, 2022 WL 219391, at *2 (quoting *United States v. Sittenfeld*, No. 1:20-cr-142, 2021 WL 1438300, at *3 (S.D. Ohio Apr. 15, 2021)); *see Sittenfeld*, 2021 WL 1438300, at *3 (acknowledging that "what constitutes 'good cause' under Rule 16(d)(1) remains an underdeveloped area of law in th[e] [Sixth] Circuit"). When deciding whether there is good cause for a protective order, courts often consider whether (1) "disclosure of the materials in question would pose a hazard to others"; (2) "the defendant would be prejudiced by a protective order"; and (3) "the public's interest in disclosure outweighs the possible harm." *Sittenfeld*, 2021 WL 1438300, at *3 (citing *Dixon*, 355 F. Supp. 3d at 4). Protective orders are common in federal criminal cases. *See Dixon*, 355 F. Supp. 3d at 4. And once good cause is found, a district court "has relatively unconstrained discretion to fashion an appropriate protective order." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018).

Here, the United States seeks a protective order to "protect" certain witnesses "from . . . retaliation" for having provided statements to law enforcement as part of both this matter and the separate state investigation into the murder and kidnapping charges against Dajuan Simonton. (D.N. 17, PageID # 51; *see id.* (asking that the requested protective order "also include the search warrant affidavits [concerning Dajuan Simonton] as they contain the statements of witnesses")) This concern for witness safety clearly amounts to good cause for a protective order. *See* Fed. R. Crim. P. 16(d)(1) advisory committee's note to 1974 amendment ("[I]t is obvious that [a protective order] would be appropriate where there is reason to believe that a witness would be

3

subject to physical or economic harm if his identity is revealed."); *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (noting that "among the considerations to be taken into account by the court" when deciding whether good cause exists is "the safety of witnesses and others"); *Dixon*, 355 F. Supp. 3d at 6 (finding good cause for a protective order because the government "believe[d] that the privacy and safety rights of the victim and witnesses to this crime warrant protection"). Moreover, Simonton does not argue, let alone explain, how the protective order requested by the United States would prejudice him. *See Dixon*, 355 F. Supp. 3d at 6 (finding good cause for a protective order in part because the defendant's "allegations of prejudice f[e]ll short"). Indeed, the "limited scope" of the government's requested order here "bears emphasis." *Sittenfeld*, 2021 WL 1438300, at *4 (granting a motion for a protective order in part because "the defendant would not be prejudiced" by the limited order proposed by the government). The order would not limit Simonton's counsel's "use of discovery materials in judicial proceedings in this case"; it would not apply to "documents that are or become part of the public court record," including evidence admitted at trial; and it would not preclude any party, including Simonton, "from applying to th[e] Court for further relief or for modification of" the protective order's terms. (D.N. 14-1, PageID # 37–38)

Yet while the justifications for a protective order governing discovery are evident here, the precise scope of the order sought by the United States is less so. In its reply, the United States requests an order that would only restrict the dissemination and use of "recordings of *witness statements*" and any reports, documents, or investigative materials "contain[ing] the contents of *witness statements*." (D.N. 17, PageID # 51 (emphasis added)) The government's initial motion, however, suggests that it instead seeks a much broader protective order that would apply to "*any* recordings, reports, and other materials that may be turned over in connection with this matter."

4

(D.N. 14, PageID # 34 (emphasis added))  And the proposed protective order attached to that motion would, by its express terms, encompass "[a]ll of the materials provided by the United States in preparation for, or in connection with, any stage of the proceedings in this case" (D.N. 14-1, PageID # 36).  In short, it is unclear whether the United States is requesting a protective order restricting all discovery in this matter or only those materials "contain[ing] the contents of witness statements."  (D.N. 17, PageID # 51)  The Court will thus deny the government's present motion without prejudice and direct it to file another motion and proposed protective order that resolves this discrepancy.  *See Johnson*, 314 F. Supp. 3d at 255, 257 (denying a motion for a protective order and ordering that another order be drafted in part because the government had failed to satisfy its burden "to explain why" various requested "restriction[s] on disclosure [were] necessary").  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The government's motion for entry of a protective order governing discovery (D.N. 14) is **DENIED** without prejudice.

(2)    The United States shall have **ten (10) days** from entry of this Order to file (i) a new motion for entry of a protective order that clarifies the scope of its request and (ii) a new proposed order that aligns with that request.

April 13, 2022

David J. Hale, Judge
United States District Court