UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CRIMINAL ACTION NO. 3:22-CR-00006-DJH

UNITED STATES OF AMERICA                                                                 PLAINTIFF

V.

DONALD A. SIMONTON                                                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## DONALD SIMONTON'S SENTENCING MEMORANDUM

Donald Simonton is a sixty-nine year old Navy Veteran and longtime thoroughbred-industry employee, with minimal criminal history, who has pled guilty to a single count of forcibly obstructing, resisting, impeding, or interfering with an officer of the United States, in violation of 18 U.S.C. §1114. Both the United States of America and Mr. Simonton agree that a sentence of 10 months probated is the appropriate disposition of this case, and have entered a plea agreement pursuant to Rule 11(c)(1)(A) and (C) recommending that sentence. Mr. Simonton was also initially charged for state law offenses of attempted murder of a police officer and wanton endangerment of a police officer stemming from this incident, but after the facts were heard by the Jefferson County Grand Jury, no true bill was returned and the grand jury declined to indict Mr. Simonton, and all charges have been dismissed. Mr. Simonton submits this sentencing memorandum in support of this Court following this agreed disposition and imposing a sentence of 10 months probation.

**THE OFFENSE CONDUCT**

Just before 6:00 a.m. on January 12, 2022, law enforcement officers with the Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Response Team ("SRT") approached the home of Donald Simonton at 363 N. 41st Street, Louisville, Kentucky to execute a Kentucky state arrest warrant for Mr. Simonton's son, Dajuan Simonton. Louisville Metro Police Department had obtained the warrants from a state court judge, but elected to have federal agents serve the warrants. Dajuan was living with his parents while on home incarceration with ankle monitoring and had reported to his probation officer the day prior to the execution of the warrant.

The law enforcement officers approached the house in silence, along with a Bearcat, a ballistic, tactical vehicle. Officers apparently knocked and announced their entrance, and hailed for the residents to come to the door, but Donald Simonton did not hear them. When interviewed, Mr. Simonton's neighbors indicated that they did not hear the officers until after they heard a loud explosion and gunshots.

At the time the warrant was executed, Donald Simonton was in bed with his life partner, Mary James. Mr. Simonton and Ms. James have been together for over 33 years and Dajuan Simonton is their son. Ms. James suffered a debilitating stroke several years ago, and Donald is her daily caregiver. They have lived in their home at 363 N. 41st Street for over thirty years. Although the neighborhood was peaceful for years, their home has been shot up with gunfire by unknown assailants several times in the past few months. Police responded to the multiple driveby shootings, but no one has been arrested.

Donald Simonton and Mary James were awakened by banging on the entryway door to their home and the explosion of a flash bang grenade. Disoriented from sleep and the flash bang grenades, Mr. Simonton did not realize the individuals were law enforcement officers. Both were scared that the individuals who had shot up their home previously were back again and attempting to break into the home. Mr. Simonton could hear the individuals enter the home downstairs. He took his gun, which he legally possessed for self-protection, and went to the doorway to his bedroom at the top of the stairs. He attempted to look outside but was blinded by flashlights shining up the steps. He then reached around the doorway and fired several warning shots over the heads of the officers at the bottom of the stairs. His intention was to scare the individuals and impede them from coming upstairs in his home, where his family was sleeping. His intent was not to injure them. The shots did not strike anyone. An officer then returned fire up the stairway. These shots did not strike anyone, either.

Several officers then shouted commands at Donald Simonton. He complied with the commands, dropped his weapon, and slid down stairs with his hands visible as instructed. He was then arrested. He admitted to shooting, but denied knowing that the individuals were police at the time.

Ring doorbell footage from a neighbor captured the silent approach of the officers to the Simonton home, but there is no body camera footage of the incident inside the home.

Additional agreed facts are set forth in paragraph 3 of the plea agreement of the parties. Mr. Simonton realizes that he should not have attempted to impede the officers

3

from executing the search warrant and accepts responsibility for his actions. Most importantly, he is thankful that no one was injured during the morning of January 12, 2022.

**OFFENSE LEVEL CALCULATION**

The singular conviction here allows for one of two distinct guidelines to be applied. Both parties agree that one guideline subsection applies, but the presentence investigation report applies the other. Mr. Simonton objects to this calculation and provides addition information in support of the application contemplated by the parties in the plea agreement.

The United States Sentencing Guidelines indicate that the guideline for a violation of 18 U.S.C. §111(a)(1) is found at either USSG §2A2.2 or §2A2.4. Subsection §2A.2.4 applies when the defendant attempted to obstruct or impede officers. This subsection establishes a base offense level of 10, and is increased by three levels if a dangerous weapon was involved. Subsection §2A2.2(a) applies only when the defendant's *intent* is to cause bodily injury. The obstructing or impeding the officer then constitutes an aggravated assault, with the higher base offense level and enhancements contemplated in the PSR. In order for the the heightened guidelines to apply, the presence of the dangerous weapon must be coupled with the intent to cause bodily injury.

Both the defendant and the United States agree that Donald Simonton did not have the intent to cause bodily injury, and the appropriate guideline to apply is §2A.2.4. In the plea agreement the parties agreed upon the factual basis for the plea and the applicable offense level calculation. The factual basis sets forth the facts the parties agree

4

upon in paragraph 3, and does not include an indication that Donald Simonton intended to cause bodily injury to the officers. In paragraph 12.A of the plea agreement, the parties affirm that the appropriate guideline is obstructing or impeding with a firearm pursuant to §2A2.4(a). And after the PSR was provided to the parties, the attorney for the United States again confirmed that the United States believes that the appropriate guideline here is §2A2.4(a) and the appropriate sentence is 10 months probated.

Mr. Simonton did not intend to cause bodily injury to the officers, and did not cause bodily injury to the officers. The officers executed the arrest warrant in the dark early morning hours. Mr. Simonton, and his wife, were still asleep. His house had been shot up on multiple occasions by unknown individuals in the last several months, including just before this incident. He did not hear the officers knock or announce their presence until after the incident. A loud disorienting flash-bang grenade was deployed just before the officers broke in the front door. Many of the neighbors interviewed by law enforcement did not see the police lights or hear them announce their presence until after hearing the flash-bang grenade was deployed. The officers that entered Mr. Simonton's home had bright flashlights on the end of their weapons which shined up the stairs toward the Simonton's bedroom. These flashlights were blinding. Furthermore the officers that entered the home did not say anything to Mr. Simonton until after he fired his weapon. All of this contributed to Mr. Simonton's state of disorientation and fear at the time of his actions.

Mr. Simonton, believing the individuals who had previously shot up his home were back, he told his wife that "they are back to try and kill us." He then grabbed his

5

lawfully possessed firearm and reached out into the hallway and fired multiple warning shots above the head of the individuals he could not see. Mr. Simonton hoped these warning shots would scare the unknown individuals into leaving his home.

**A SUFFICIENT, BUT NOT GREATER THAN NECESSARY, SENTENCE**

For all of these reasons, the appropriate guideline to be applied is §2A2.4. To the extent the Court applies a guideline offense level different from the one contemplated by the parties, Mr. Simonton requests that the Court follow the recommendation of the parties and impose a sentence of 10 months probated. This sentence would be "sufficient, but not greater than necessary, to comply with the purposes set forth in the statute in section (a)(2) of the statute: to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

**EXPECTED CONDUCT ON PROBATION**

Donald Simonton is a strong candidate for probation. He is a Navy veteran. He has worked for many years in the thoroughbred industry in a variety of hard-working tasks that require responsibility and obedience to instructions. He is now retired and spends his time caring for Mary, since her stroke several years ago. He is a family man as is indicated in the letters of support provided to the Court. They own their home and have been there for decades. Mr. Simonton grew up and has spend his entire life in the

neighborhood. He helps his family and neighbors and will continue to demonstrate this character on probation.

CONCLUSION

For all the foregoing reasons, Donald Simonton respectfully requests that this Court impose a sentence of 10 months probated, as agreed to and recommended by the parties.

Respectfully submitted,

*/s/ Michael L. Goodwin*
MICHAEL L. GOODWIN
600 West Main Street, Suite 100
Louisville, Kentucky 40202
502-584-7622
michaellgoodwin@me.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Court the CM/ECF system on this the 16th day of February 2023.

*/s/ Michael L. Goodwin*
MICHAEL L. GOODWIN